IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE ASBESTOS LITIGATION: ) | |
| ) | |
| NEAL WINES, Individually and as ) | |
| Executor of the Estate of DONNIE ) | Civil Action No. 14-1190-GMS-SRF |
| LACEY WINES, and on behalf of all ) | |
| Wrongful Death beneficiaries, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ABB, INC., et al., ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

**I.   INTRODUCTION**

Presently before the court in this asbestos-related personal injury action is Plaintiff's Motion to Remand to State Court ("Motion to Remand") on the grounds that the Notice of Removal filed by Rockwell Automation Inc. ("Rockwell")[1] was untimely and does not meet the requirements of the federal officer removal statute. (D.I. 151) For the reasons that follow, I recommend that the court GRANT Plaintiff's Motion to Remand.

**II.   BACKGROUND**

Donnie Lacey Wines ("Mr. Wines") and Vergie Wines filed this action against numerous defendants in the Superior Court of the State of Delaware on August 7, 2014.[2] (D.I. 1, Ex. A) The Complaint alleges that Mr. Wines developed mesothelioma as a result of exposure to

---

[1] Rockwell was formerly known as Rockwell International Corporation. The defendant is sued individually and as a successor-in-interest to Allen-Bradley Co. (D.I. 1 at 1)

[2] Mr. Wines and Vergie Wines both passed away following the initiation of this suit. The Complaint has since been amended to substitute Neal Wines ("Plaintiff") as the personal representative of the decedents' estates. (D.I. 152)

asbestos-containing products manufactured or supplied by various defendants, including Allen-Bradley and its successor-in-interest, Rockwell. (*Id.*, Ex. A at ¶¶ 22, 30) Specifically, Mr. Wines claims he was wrongfully exposed to asbestos while working as an electrician, instructor, and supervisor for Newport News Shipbuilding in Newport News, Virginia from 1961 to 1977, while working as an electrician for Burlington Industries Carpet Mill in Glasgow, Virginia from 1977 to 2002, and while performing maintenance on his personal vehicle and residences in the 1960's through 1970's.[3] (*Id.*, Ex. A at ¶ 30) The Complaint alleges that the defendants

> were at all times pertinent directly or indirectly engaged in the mining, manufacturing, distribution, sales, licensing, leasing, installation, removal and/or use of asbestos, asbestos-containing products and/or products designed for use with asbestos or asbestos-containing products. They were also engaged in the development, manufacture, distribution, sales, licensing or leasing of equipment, procedures and/or technology necessary to mine, manufacture, sell, distribute, install, remove and use asbestos and asbestos-containing products.

(*Id.*, Ex. A at ¶ 34) It is further alleged that

> [t]he Defendants were negligent in conducting the above activities and/or in the safety conditions at their plants and facilities despite the fact that the Defendants knew or should have known that asbestos exposure could result in serious injury, disease and/or death, Defendants:
>
> (a) Failed to substitute, suggest, promote or require the substitution of materials other than asbestos;
> (b) Failed to adequately warn all potential victims of asbestos, including Plaintiff DONNIE LACY WINES, as well as other users, bystanders, household members and members of the general public of the risks of asbestos;
> (c) Failed to adequately test, research, or investigate asbestos and/or its effects prior to sale, use, and/or exposure of Plaintiff DONNIE LACEY WINES and others similarly situated;
> (d) Failed to adequately package, distribute and/or use asbestos in a manner which would minimize the escape of asbestos fibers therefore adding to the exposure of Plaintiff DONNIE LACEY WINES and others similarly situated; and
> (e) Failed to take adequate steps to remedy the above failures, including but not limited to recall of asbestos, abatement of asbestos on their property, recall of asbestos products, conduct research as to how to cure or minimize asbestos

---

[3] Vergie Wines asserted a loss of consortium claim derivative of Mr. Wines' claims. (*Id.*, Ex. A at ¶ 32)

>       injuries, distribute asbestos so as to render it safe or safely remove the
>       asbestos now in place.

(*Id.*, Ex. A at ¶ 37)

On August 11, 2014, Plaintiff's decedents electronically filed responses to interrogatories and requests for production of documents, including medical records, a doctor-hospital list, and a work history sheet. (D.I. 32 at 20–31, Ex. 1, Ex. 2 at 1–25) In the work history sheet, Mr. Wines identified a dozen Navy vessels[4] that he worked on at the time of his alleged exposure to asbestos. (*Id.*, Ex. 2 at 16–24)

Rockwell contends that it first learned of the Complaint on August 14, 2014 after a routine docket search, even though Rockwell was not formally served until September 3, 2014. (D.I. 53 at 1, Ex. B) In its interrogatory responses, Rockwell admits that it manufactured and sold industrial electrical power products from the 1930's until 1985, which incorporated some asbestos-containing subcomponents molded by Allen-Bradley. (D.I. 32, Ex. 3 at 3)

Based on receipt of the Complaint and preliminary discovery, Rockwell removed the action to this court on September 15, 2014 pursuant to 28 U.S.C. § 1442(a)(1), the federal officer removal statute. (D.I. 1) Rockwell based removal on Plaintiff's decedent's allegations of exposure to asbestos-containing Allen-Bradley electrical equipment, which Rockwell supplied to the Navy in accordance with the Government's design and manufacturing specifications. (*Id.* at 2)

On October 15, 2014, Plaintiff filed a Motion to Remand, asserting that Rockwell's Notice of Removal was untimely, and that this court lacks federal officer jurisdiction. (D.I. 27)

---

[4] Mr. Wines recalled performing repair work on the USS Shark and USS Robert E. Lee. (*Id.*, Ex. 2 at 17) He recalled working on new construction onboard the USS James Monroe, USS James Madison, USS John C. Calhoun, USS Von Steuben, USS Sam Rayburn, USS Simon Bolivar, USS America, USS John F. Kennedy, USS Nimitz, and USS California. (*Id.*)

3

After the deaths of the original plaintiffs, the court entered a stay and denied the Motion to Remand without prejudice pending substitution of the proper party plaintiff. (D.I. 142) Thereafter, the Complaint was amended to add a wrongful death claim and to substitute Neal Wines as Plaintiff and executor of the original plaintiffs' estates. (D.I. 152) Plaintiff subsequently renewed the Motion to Remand on January 20, 2016, and Rockwell renewed its opposition on February 2, 2016. (D.I. 151; D.I. 156)

## III. LEGAL STANDARD

### A. Removal Jurisdiction

The federal officer removal statute, 28 U.S.C. § 1442(a)(1), provides that a civil action may be removed to the district court when the United States, an agency thereof, or any officer or person acting under that officer is sued for any act under the color of such office. The party removing an action to federal court bears the burden of proving that subject matter jurisdiction exists and that removal is proper. *See Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990). In the Third Circuit, the provisions of the federal officer removal statute are to be "broadly construed."[5] The Supreme Court has explained that "the right of removal is absolute for conduct performed under color of federal office, and has insisted that the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'"

---

[5] The Third Circuit draws a distinction between the removal provisions of § 1441, which "are to be strictly construed against removal," *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987), and the provisions of the federal officer removal statute, which are to be "broadly construed." *Sun Buick, Inc. v. Saab Cars USA, Inc.*, 26 F.3d 1259, 1262 (3d Cir. 1994); *Megill v. Worthington Pump, Inc.*, No. CIV. A. 98-76-SLR, 1999 WL 191565, at *2 (D. Del. Mar. 26, 1999); *Walkup v. Air & Liquid Sys. Corp.*, Civil Action No. 12-1635-SLR-SRF, 2013 WL 5448623, at *1–2 (D. Del. Sept. 26, 2013), *report and recommendation adopted*, 2013 WL 5798701 (D. Del. Oct. 24, 2013). *See also Deuley v. Dyncorp Int'l, Inc.*, 588 F. Supp. 2d 539, 542 (D. Del. 2008) ("It is recognized that this provision [§ 1442(a)(1)] is not to be construed narrowly."); *Parlin v. Dyncorp Int'l, Inc.*, 579 F. Supp. 2d 629, 634 (D. Del. 2008) (explaining that § 1442(a) is "liberally construed").

*Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) (citation omitted).

To establish federal officer removal jurisdiction under § 1442(a)(1), a defendant must satisfy the following:

> (1) it is a "person" within the meaning of the statute;
> (2) the plaintiff's claims are based upon the defendant's conduct "acting under" a federal office;
> (3) it raises a colorable federal defense; and
> (4) there is a causal nexus between the claims and the conduct performed under color of a federal office.

*Feidt v. Owens Corning Fiberglas Corp.*, 153 F.3d 124, 127 (3d Cir. 1998) (citing *Mesa v. California*, 489 U.S. 121, 129 (1989)).

### B. Timing of Removal

While § 1442 governs the substantive jurisdictional requirements for federal officer removal, § 1446 dictates the timeliness of removal. Section 1446(b) provides that "the notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). If the basis for removal is not set forth in the initial pleading, however, a defendant must remove within thirty days after receiving "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."[6] § 1446(b)(3). Thus, an action must be removed within thirty days of receipt of the initial pleading when grounds for removal arise in the initial pleading. However, if the initial pleading does not give

---

[6] The thirty-day removal limitation is meant to deter a defendant from waiting to see how they would fair in state court before choosing whether to remove the case to district court, "and to prevent the delay and waste of resources involved in starting a case over in a second court after significant proceedings, extending over months or even years, may have taken place in the first court." *Mims v. 84 Lumber Co.*, Civil Action No. 13-298-SLR-CJB, 2013 WL 4775306, at *2 n. 2 (D. Del. Sept. 6, 2013), *report and recommendation adopted*, 2013 WL 6571816 (D. Del. 12, 2013) (quoting *Price v. Wyeth Holdings Corp.*, 505 F.3d 624, 631 (7th Cir. 2007)).

5

rise to grounds for removal, then the thirty days begins to run after receipt of a subsequent document setting forth grounds that warrant removal.

As with jurisdiction, the defendant bears the burden of showing the timeliness of removal. *See Mims*, 2013 WL 4775306, at *2 (citing *Scearce v. 3M Co.*, 2013 WL 2156060, at *3 (D.N.J. May 16, 2013)).

## IV. DISCUSSION

Plaintiff challenges removal on the basis that it was untimely, and that Rockwell has failed to satisfy the elements for removal jurisdiction. (D.I. 28 at 3–20)

### A. Timeliness of Removal

To be timely, Rockwell must have filed the Notice of Removal "within 30 days after the receipt...of the initial pleading...." 28 U.S.C. § 1446(b)(1). Under § 1446(b)(3), a defendant may rely on the initial pleading, amended pleadings, motions, orders, or other papers to ascertain removability.

Plaintiff argues that the thirty-day removal period was triggered on August 11, 2014, when Plaintiff electronically filed the interrogatory responses. (D.I. 28 at 5) Plaintiff asserts that this filing qualifies as an "other paper" pursuant to § 1446(b)(3) "from which Rockwell could have first ascertained the removability of this case." (*Id.*) Rockwell acknowledges that Plaintiff's interrogatory responses supplied sufficient facts for it to have ascertained removability based on the federal contractor defense.[7] (D.I. 52 at 5; D.I. 32 at 66–73) However, Rockwell asserts that it did not learn of Plaintiff's interrogatory responses until August 14, 2014, after its defense counsel discovered the action and Complaint while conducting a routine docket search.

---

[7] The interrogatory responses include a work history sheet, which lists the Navy vessels upon which Mr. Wines worked at the time of his alleged asbestos exposure. (D.I. 52 at 5; D.I. 32 at 66–73)

6

(D.I. 53 at 1–3)

When § 1446(b)(1) and § 1446(b)(3) are read together, the plain language[8] of the statute indicates that subsection (b)(3) does not apply unless a defendant has already received the "initial pleading." *See* 28 U.S.C. § 1446(b). The statute reads:

> (1) The notice of removal...shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter....
>
> (3) Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

§§ 1446(b)(1), (b)(3).

While citing legislative history, the Third Circuit explained that in drafting § 1446(b), Congress intended to "eliminate the situation wherein a defendant who has not received the complaint must decide whether to remove 'before he knows what the suit is about.'" *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 222 (3d Cir. 2005) (citing *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 352 (1999)). Therefore, the Third Circuit relied on Supreme Court precedent and held that subsection (b)(3) does not apply if the "other papers" were received before the complaint. *Id.* at 221–23. In such a case, the complaint constitutes the "initial pleading" under the terms of the removal statute, so the time for removal begins to run

---

[8] "[W]here ... the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)).

upon receipt of the complaint, and not upon receipt of the "other papers."[9] *Id.* Accordingly, for an "other paper" to trigger the thirty-day period in the present action, Rockwell must have received the "other paper" after or at least contemporaneously with the initial pleading.

Rockwell received the initial pleading and the "other paper" on the same date. It acknowledged receipt of both the Complaint and the interrogatory responses on August 14, 2014 through its defense counsel. (D.I. 53 at 5) Therefore, it is unnecessary to consider timeliness under § 1446(b)(3). The thirty-day time period commenced on August 14, 2014, so Rockwell's removal by September 15, 2014 is timely.[10] (D.I. 1)

Having determined that the Notice of Removal was timely filed, the court must address whether Rockwell has satisfied the substantive requirements pursuant to the federal officer removal statute.

### B. Federal Officer Removal Jurisdiction

To establish removal jurisdiction under § 1442(a)(1), Rockwell must show the following:

(1) it is a "person" within the meaning of the statute;
(2) the plaintiff's claims are based upon the defendant's conduct "acting under" a federal office;
(3) it raises a colorable federal defense; and
(4) there is a causal nexus between the claims and the conduct performed under color of a federal office.

*Feidt v. Owens Corning Fiberglas Corp.*, 153 F.3d 124, 127 (3d Cir. 1998) (citing *Mesa v. California*, 489 U.S. 121, 129 (1989)).

### 1. Whether Rockwell is a "person" within the meaning of § 1442(a)(1)

---

[9] The *Sikirica* case interprets § 1446 prior to amendments which separated the paragraphs of § 1446(b) into separate subsections. The substance of the subsections, although now separated into § 1446(b)(1) and § 1446(b)(3), remains the same as when the *Sikirica* court interpreted the language of the statute.

[10] Thirty days from August 14, 2014 falls on September 13, 2014. As September 13, 2014 was a Saturday, the deadline to file for removal was extended to September 15, 2014. *See* Fed. R. Civ. P. 6(a)(c).

With respect to the first element of the statute, there is no dispute that Rockwell, as a corporation, is a "person" within the meaning of the statute. *See In re Asbestos Litig. (Seitz)*, 661 F. Supp. 2d 451, 454 (D. Del. 2009) (citing *Good v. Armstrong World Indus., Inc.*, 914 F. Supp. 1125, 1128 (E.D. Pa. 1996)); *Kirks v. Gen. Elec. Co.*, 654 F. Supp. 2d 220, 223 (D. Del. 2009); *Hicks v. Boeing Co.*, Civil Action No. 13-393-SLR-SRF, 2014 WL 1051748, at *4, (D. Del. Mar. 17, 2014), *report and recommendation adopted*, 2014 WL 1391104 (D. Del. Apr. 8, 2014). Therefore, the first element of the federal officer removal statute has been met.

## 2. Whether Plaintiff's claims are based upon Rockwell's conduct "acting under" a federal office

The second factor has been described as "requiring 'a showing that the acts forming the basis of the state suit were performed pursuant to an officer's direct orders or comprehensive and detailed regulations.'" *In re Asbestos Litig. (Seitz)*, 661 F. Supp. 2d at 454 (quoting *Good*, 914 F. Supp. at 1128). Accordingly, Rockwell "must demonstrate that a 'federal office' was the source of the specific act for which [it] now faces suit." *Id.* (citing *Holdren v. Buffalo Pumps, Inc.*, 614 F. Supp. 2d 129, 138 (D. Mass. 2009)). "By contrast, if the corporation establishes only that the relevant acts occurred under the general auspices of federal direction then it is not entitled to § 1442(a)(1) removal." *Good*, 914 F. Supp. at 1128.

Rockwell asserts that the Declaration of Thomas F. McCaffrey[11] ("McCaffrey") establishes the "acting under" element of the federal officer removal statute. (D.I. 53 at 10) McCaffrey demonstrates that electrical components utilized on naval vessels were required to meet standards and regulations established by the Navy. (*Id.*) Plaintiff acknowledges that

---

[11] McCaffrey is a Retired Commander of the U.S. Navy and member of the Society of Naval Architects and Marine Designers. (D.I. 1, Ex. D at ¶ 4)

9

McCaffrey's statements generally indicate that electrical components would have complied with regulations if used on Navy ships. (D.I. 66 at 4) However, removal is not appropriate because McCaffrey does not establish that Rockwell actually acted under Navy direction in manufacturing the particular Allen-Bradley products to which Plaintiff's decedent alleges exposure. (*Id.*)

Specifically, McCaffrey states in his Declaration that "Allen-Bradley was not approved to provide electrical motor control products to the Navy with the exception of a variable rheostat intended to be used in cranes aboard surface ships."[12] (D.I. 1, Ex. D at ¶ 9) Therefore, Rockwell's argument that it "acted under" the direction of the Navy is internally inconsistent with its denial that it supplied asbestos-containing products to the Navy at the Navy's direction. In other words, McCaffrey's Declaration shows that Rockwell generally did not supply asbestos-containing products to the Navy. However, if it did, Rockwell was acting under direct orders or detailed Navy regulations, even though such products were not approved by the Navy.

McCaffrey states that only equipment listed on the Navy Qualified Products List ("QPL") may be used on Navy vessels. (*Id.*, Ex. D at ¶ 8) He explained that in the 1940's, Allen-Bradley was approved to mold a type of non-asbestos plastic called "CFG" for the Navy. (*Id.*, Ex. D at ¶ 10) However,

> no Allen-Bradley or Rockwell product was approved on any relevant Navy QPL for use under specification MIL-M-14, MIL-M-21556, or any other specification for molded plastic materials calling for a plastic material identified as type "MFG," "MFI," of any other type that identifies a thermosetting plastic which used asbestos.

(*Id.*, Ex. D at ¶ 13) Accordingly, McCaffrey's Declaration establishes that no asbestos-containing

---

[12] The McCaffrey Declaration was previously submitted in an unrelated asbestos matter in an outside jurisdiction. The Declaration recites general background facts concerning the use of Allen-Bradley electrical motor control products on Navy vessels.

Allen-Bradley product appeared on the Navy QPLs from the 1940's to the 1980's, except for the rheostat used in cranes. (*Id.*, Ex. D at ¶ 9) Mr. Wines only testified to working with Allen-Bradley products while cleaning contactors,[13] breakers, and circuit breakers aboard Navy vessels. (D.I. 1, Ex. 3 at 17–19)

McCaffrey's Declaration supports that Rockwell, as a successor-in-interest to Allen-Bradley, did not act under Navy direction in allegedly supplying the asbestos-containing "electrical panels and parts" to which Plaintiff's decedent claims exposure. (*Id.*, Ex. 2 at 4) Therefore, the evidence presented fails to establish the "acting under" requirement under the federal officer removal statute.

### 3. Whether Rockwell has raised a colorable federal defense[14]

The third factor requires the removing defendant to demonstrate a colorable defense to a plaintiff's claims. *Megill v. Worthington Pump, Inc.*, No. CIV. A. 98-76-SLR, 1999 WL 191565, at *3 (D. Del. March 26, 1999). In the present action, Rockwell relies on the federal government contractor defense. (D.I. 1) According to the Supreme Court, a federal contractor is not liable for design defects in military equipment[15] under state tort laws when:

(1) the United States approved reasonably precise specifications;
(2) the equipment conformed to those specifications; and
(3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.[16]

---

[13] Contactors are also referred to as motor starters. (D.I. 1, Ex. 3 at 17)
[14] For completeness, the remaining requirements of the federal officer removal statute are addressed in this Report and Recommendation.
[15] In the Third Circuit, the government contractor defense is "available to all contractors who are 'compelled by a contract to perform an obligation for the United States,' even where a nonmilitary product is at issue." *Megill*, 1999 WL 191565, at *3 n. 1 (quoting *Carley v. Wheeled Coach*, 991 F.2d 1117, 1120 (3d Cir. 1993)).
[16] According to the *Boyle* court:
    The first two of these conditions assure that . . . the design feature in question was considered by a Government officer, and not merely by the contractor itself. The third condition is necessary because, in its absence, the displacement of state tort

11

*Boyle*, 487 U.S. at 512–13.

Federal courts have tailored the *Boyle* elements to failure to warn claims as follows:

(1) the United States exercised its discretion and approved the warnings, if any;
(2) the contractor provided warnings that conformed to the approved warnings; and
(3) the contractor warned the United States of the dangers in the equipment's use about which the contractor knew, but the United States did not.

*Hicks v. Boeing Co.*, Civil Action No. 13-393-SLR-SRF, 2014 WL 1051748, at *5 (D. Del. Mar. 17, 2014), *report and recommendation adopted*, (D. Del. Apr. 8, 2014) (quoting *MacQueen v. Union Carbide Corp.*, Civil Action No. 13-831-SLR-CJB, 2013 WL 6571808, at *4 (D. Del. Dec. 13, 2013), *report and recommendation adopted*, 2014 WL 108535 (D. Del. Jan. 9, 2014)).

The Supreme Court in *Boyle* held that the government contractor defense pre-empts state tort law when "the state-imposed duty of care that is the asserted basis of the contractor's liability...is precisely contrary to the duty imposed by the government contract." *Boyle*, 487 U.S. at 509. Thus, in actions such as the present case, involving allegations of failure to warn of the dangers of asbestos, the removing defendant

must show that the applicable federal contract includes warning requirements that significantly conflict with those that might be imposed by state law. Moreover, it seems clear to us [] that *Boyle's* requirement of government approval of "reasonably precise specifications" mandates that the federal duties be imposed upon the contractor. The contractor must show that whatever warning accompanied a product resulted from a determination of a government official,...and thus that the government itself "dictated" the content of the warnings meant to accompany the product.

*In re Asbestos Litig. (Seitz)*, 661 F. Supp. 2d 451, 454 (D. Del. 2009) (quoting *In re Joint E. & S. Dist. N.Y. Asbestos Litig.*, 897 F.2d 626, 630 (2d Cir. 1990)).

There is evidence in the record to establish the elements of the federal government

---

law would create some incentive for the manufacturer to withhold knowledge of risks, since conveying that knowledge might disrupt the contract but withholding it would produce no liability.

*Boyle v. United Techs Corp.*, 487 U.S. 500, 512–13 (1988).

12

contractor defense. With respect to the first and second prongs, McCaffrey explained that the Navy required all equipment to meet certain specifications, and only items on the Qualified Products List were approved for Navy use. (D.I. 1, Ex. D at ¶ 9) Additionally, Rockwell proffers Declarations from Rear Admiral David P. Sargent, Jr. and Samuel A. Forman, M.D, consistent with declarations previously submitted in other cases, which satisfied the three prongs of the federal government contractor defense under the *Boyle* analysis. (D.I. 53, Ex. C; D.I. 58) *See Evans v. Foster Wheeler Energy Corp.*, C.A. No. 15-681-SLR-SRF, 2016 WL 452310, at * 8 (D. Del. Feb 5, 2016), *report and recommendation adopted*, 2016 WL 754122 (D. Del. Feb. 24, 2016) (citing *Boyle*, 487 U.S. at 512). Rear Admiral Sargent stated that the Navy drafted, approved, and maintained specifications for any equipment intended for use aboard Navy ships. (D.I. 58 at ¶ 27) Manufacturers "would not have been permitted...to vary or to deviate in any respect from the Navy specifications in supplying equipment, including affixing any type of warning or caution statement to equipment intended for installation in a Navy ship.... (*Id.* at ¶ 58) With respect to the third prong, Dr. Forman makes clear that the Navy knew about the hazards of asbestos as early as 1922, as exemplified by numerous Navy publications and statements acknowledging and concerning the topic. (D.I. 53, Ex. C at ¶¶ 27–31, 36–45, 47–55)

Although the Declarations plausibly support the elements of the federal government contractor defense, for example, that equipment conformed to the Navy's reasonably precise specifications, and that the dangers of asbestos were known to the Navy, the evidence is insufficient to establish all elements under the federal officer removal statute. That the Navy approved reasonably precise specifications does not necessarily mean that Rockwell was acting under or pursuant to those specifications. Accordingly, and for the reasons further detailed in Sections IV(B)(2), *supra*, and IV(B)(4), *infra*, Rockwell fails to establish federal officer removal

13

jurisdiction.

### 4. Whether there is a causal nexus between Plaintiff's claims and Rockwell's conduct performed under color of a federal office

"'A crucial element of both the *Boyle* decision and the removal requirements is missing if the contractor fails to establish a causal connection between the conduct being supervised by the [federal office] and the conduct deemed offensive in the plaintiff's complaint.'" *In re Asbestos Litig. (Seitz)*, 661 F. Supp. 2d 451, 454 (D. Del. 2009) (alteration in original) (quoting *Megill v. Worthington Pump, Inc.*, CIV. A. 98-76-SLR, 1999 WL 191565, at *4 (Mar. 26, 1999)).

In the present action, Plaintiff asserts liability based on the following conduct: 1) failure to substitute other materials for asbestos; 2) failure to warn; 3) failure to adequately research the dangers of asbestos; 4) failure to adequately package, distribute, and use asbestos; and 5) failure to remedy the above failures. The McCaffrey Declaration indicates that the Navy did not approve any asbestos-containing Allen-Bradley product, except for one product not at issue, here. Therefore, there is no causal connection between Plaintiff's decedent's claims and the conduct performed under color of a federal office, as the evidence is insufficient to establish that the claims arose out of the direct orders or detailed regulations of the Navy. As such, removal is not appropriate under the federal officer removal statute, and Plaintiff's Motion to Remand should be GRANTED.

### V. CONCLUSION

For the foregoing reasons, I recommend that the court GRANT Plaintiff's Motion to Remand.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections

within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 92he 4, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: June 10, 2016

Sherry R. Fallon
United States Magistrate Judge